UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MCNIDER MARINE, LLC and
JOHN BRUCE MCNIDER,
        Plaintiffs,

v.                                                         Case No. 8:17-cv-2561-T-24 JSS

CAIN & DANIELS, INC., ROBERT
KOLODNER and MAX LORA,
        Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss. (Doc. No. 12). Plaintiffs oppose the motion. (Doc. No. 16). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are

true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II. Background**

Plaintiffs allege the following in their amended complaint (Doc. No. 9): Plaintiff John Bruce McNider ("Mr. McNider") owns Plaintiff McNider Marine, LLC ("McNider Marine"). McNider Marine is in the business of selling and repairing boats. Plaintiffs owed Wells Fargo approximately $334,000.

Defendant Cain & Daniels ("C&D") provides debt settlement services, and Defendants Robert Kolodner and Max Lora appear to be employees of C&D.[1] Lora sent Plaintiffs an Engagement Letter[2] with the title: "**SAVE ABOUT HALF ON YOUR SETTLEMENT**." (Doc. No. 1-2). The Engagement Letter stated that C&D is a debt settlement company that attempts to reduce a debtor's debts and that "[s]ettlements are generally reached within 2 weeks." (Doc. No. 1-2). The Engagement Letter further provided: "If we are unable to secure a satisfactory **settlement** (for our client), there is **NO CHARGE**." (Doc. No. 1-2). At the bottom of the Engagement Letter, C&D states: "**Your Debt Will Be Cut To About Half!**" (Doc. No. 1-2). Plaintiffs allege that Kolodner directed, controlled, and/or approved this advertisement, and

---

[1] Plaintiffs allege different actions by Kolodner and Lora on behalf of C&D.

[2] The Engagement Letter was attached to the original complaint (Doc. No. 1-2) and referenced in the amended complaint. It appears that the failure to attach the Engagement Letter to the amended complaint was an oversight.

2

Lora orally reiterated to Mr. McNider that the Wells Fargo debt would be reduced to about half.

Lora sent Plaintiffs a proposed Agreement for Services ("Agreement") along with the Engagement Letter.[3] In the Agreement, C&D states: "All funds for the agreed settlement including any fees for Cain & Daniels will not exceed Sixty Percent **(60%)** of the plaintiff's claim unless authorized by [McNider Marine]." (Doc. No. 1-2). The Agreement further provides that when payment schedules are arranged, a one-time fee of 8% will apply for claims over $50,001. Finally, the Agreement states in bold and underlined font: "**There will be no ($0.00) cost to the Debtor if a settlement has not been reached between the parties.**" (Doc. No. 1-2).

On January 25, 2017, McNider Marine and C&D executed the Agreement. Additionally, on January 25, 2017, Mr. McNider executed a Power of Attorney in favor of C&D to allow C&D to negotiate creditors' claims and obtain reasonable settlements on his behalf.[4] Months thereafter, C&D proposed to Plaintiffs a payment plan for the entire $334,000 debt. The payment plan consisted of 60 monthly payments of $3,000, plus a $154,000 balloon payment.

Mr. McNider told Lora that he could not make the negotiated payments and that this proposal was inconsistent with the promise to cut the Wells Fargo debt to about half. Lora responded that this was the best that he could do and that Mr. McNider would have to take it. However, if Mr. McNider accepted the proposal, Plaintiffs would still have to pay the entire $334,000 debt, plus pay a 8% fee to C&D (equaling $26,720). C&D agreed to discount the

---

[3]The Agreement was attached to the original complaint (Doc. No. 1-2) and referenced in the amended complaint. It appears that the failure to attach the Agreement to the amended complaint was an oversight.

[4]The Power of Attorney was attached to the original complaint (Doc. No. 1-2) and referenced in the amended complaint. It appears that the failure to attach the Power of Attorney to the amended complaint was an oversight.

$26,720 fee to $21,200. However, accepting this deal would have put Plaintiffs into bankruptcy.

Lora would not take no for an answer and told Wells Fargo that their payment plan proposal was accepted. Plaintiffs claim that this proposal had no regard for Plaintiffs' interests, and Defendants attempted to bind Plaintiffs to a settlement that Defendants knew or should have known that Plaintiffs could not afford.

About two weeks later, Lora contacted Mr. McNider asking for a $20,000 down payment. Mr. McNider told Lora that he did not have that kind of money, and Lora responded that he needed a $9,000 down payment. C&D already had $6,200 from Plaintiffs as a retainer for an unrelated matter that was resolved before C&D performed any work, so Plaintiffs asked that the $6,200 be returned. Lora said that the $6,200 would be kept as a partial payment of C&D's fee.

Mr. McNider asked to see the settlement agreement with Wells Fargo, and Lora became defensive. Mr. McNider later learned that the $9,000 "down payment" that Lora was demanding was not going towards the Wells Fargo debt, but instead, it was a payment towards C&D's fees. Plaintiffs contend that not only did Lora lie about the "down payment," but Lora also lied about discounting C&D's fee to $21,200. Instead, Lora was really only offering to discount the $26,720 fee to $26,200 (consisting of the $20,000 "down payment" plus the $6,200 unearned retainer in the unrelated matter). Had C&D actually reduced Plaintiffs' debt to half, Plaintiffs would owe Wells Fargo $167,000 and C&D $26,720, resulting in a net savings to Plaintiffs of $140,280.

Thereafter, C&D sent Mr. McNider an agreement titled, "Defendant Order of Payment" with the legal caption of <u>Wells Fargo v. McNider Marine</u>, which indicated that a settlement had been reached between Wells Fargo and C&D acting as Mr. McNider's representative. The

agreement required Plaintiffs to make an initial settlement payment of $12,000 to C&D. However, this was a misrepresentation, as some or all of the $12,000 was going to be kept by C&D as payment of its fee.

As a result of the above, Plaintiffs filed suit against Defendants. The complaint was filed based on diversity subject matter jurisdiction as Plaintiffs are citizens of Alabama and Defendants are citizens of Florida.

In the amended complaint, Plaintiffs assert four claims. Plaintiffs assert the following three claims against all three defendants: (1) violation of Florida's Deceptive and Unfair Trade Practices Act; (2) violation of Alabama's Deceptive Trade Practices Act; and (3) fraudulent inducement. Additionally, McNider Marine asserts a breach of contract claim against C&D. In response, Defendants filed the instant motion to dismiss.

### III.  Motion to Dismiss

Defendants filed a poorly drafted motion to dismiss that simply spews various arguments with very little analysis or connection to the specific facts of this case. Accordingly, the Court will attempt to address Defendants' arguments below.

#### A.  Pleading Counts I, II, and III

In Counts I, II, and III, Plaintiffs assert three claims against Defendants: (1) violation of Florida's Deceptive and Unfair Trade Practices Act; (2) violation of Alabama's Deceptive Trade Practices Act; and (3) fraudulent inducement. Below the Court analyzes the pleading sufficiency of each claim.

##### 1.  FDUTPA

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") declares the following

unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."[5] Fla. Stat. § 501.204(1). In order to state a FDUTPA claim, Plaintiffs must allege the following: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Carriuolo v. General Motors Co., 823 F.3d 977, 983 (11th Cir. 2016)(citation omitted). As explained below, Plaintiffs have sufficiently alleged a FDUTPA claim.

First, Plaintiffs must allege a deceptive or unfair practice. As explained by the Eleventh Circuit:

> To satisfy the first element, the plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."

Id. at 983–84 (internal citations omitted).

Upon review of the amended complaint, Plaintiffs have sufficiently alleged a deceptive or unfair practice. Specifically, Plaintiffs allege that Defendants advertised that C&D could cut Plaintiffs' debt by about half and that there would be no cost to Plaintiffs unless a settlement satisfactory to Plaintiffs was reached. Additionally, Plaintiffs allege that Lora lied about the amount of fee that C&D was charging and which entity (Wells Fargo and/or C&D) was receiving the initial settlement payment. These allegations sufficiently describe a deceptive or unfair practice.

---

[5]In determining whether a method, act, or practice violates FDUTPA, the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission and federal courts apply. Fla. Stat. § 501.203(3)(b).

Second and third, Plaintiffs must allege that the deceptive or unfair practice caused Plaintiffs' damages. Plaintiffs have alleged that due to the these representations, Plaintiffs were induced into executing the Agreement and now owe C&D a fee of several thousand dollars. These allegations sufficiently show causation and damages.

Defendants make three arguments in support of their contention that the FDUTPA claim is not properly pled. First, Defendants argue that their statements are mere puffery. The Court rejects this argument. The representations that there would be no cost to Plaintiffs unless a settlement satisfactory to Plaintiffs was reached, representations about the amount of C&D's fee, and representations regarding which entity was receiving the initial settlement payment are statements of fact, not opinion, so Defendants' puffery argument does not apply.

Likewise, the Court rejects Defendant's argument that their representation that C&D could cut Plaintiffs' debt by about half is non-actionable puffery. "[F]actual assertions that are capable of measurement . . . are not puffery." In re E.S. Bankest, L.C., 2010 WL 1417737, at *2 (Bankr. S.D. Fla. April 6, 2010)(citation omitted). Defendants advertised that C&D could cut Plaintiffs' debt by about half, when in fact, C&D did not reduce Plaintiffs' debt at all.

Second, Defendants argue that Plaintiffs' reliance on the representation that C&D could cut Plaintiffs' debt by about half was not reasonable given that the Agreement did not contain that promise. However, there is nothing contained in the Agreement that contradicts this representation, and the representation was contained in the Engagement Letter attached to the Agreement.

Third, Defendants argue that Kolodner was not a party to the Agreement, and as such, he cannot be held liable. The Court rejects this argument. In order for Kolodner to be individually

liable for FDUTPA violations, Plaintiffs must allege that he: "(1) participated directly in the deceptive acts or practices; or (2) possessed the authority to control them; and (3) had some knowledge of the practices." Federal Trade Commission v. Student Aid Center, Inc., 2016 WL 10719950, at *7 (S.D. Fla. 2016)(citations omitted). Plaintiffs have alleged that Kolodner directed, controlled, and/or approved the advertisement, which stated that C&D could cut Plaintiffs' debt by about half and that there would be no cost to Plaintiffs unless a settlement satisfactory to Plaintiffs was reached. Accordingly, the Court denies Defendants' motion as to this claim.

### 2. ADTPA

Alabama's Deceptive Trade Practices Act ("ADTPA") provides several examples of violations, including: (1) representing that services have benefits or qualities that they do not have; (2) advertising services with the intent not to sell them as advertised; and (3) engaging in any false, misleading, or deceptive act or practice in the conduct of trade or commerce.[6] Ala. Stat. § 8-19-5(5), (9), & (27). For the same reasons as set forth above with regards to the FDUTPA claim, the Court finds that Plaintiffs have sufficiently alleged an ADTPA claim.

Defendants make the same arguments of puffery, unreasonable reliance, and no individual liability for Kolodner as set forth above. However, Defendants fail to cite any Alabama case law to support these arguments, and the Court will not do their work for them. Accordingly, the Court declines to address these arguments further and will not grant Defendants' motion to dismiss this claim.

---

[6]Like FDUTPA, ADTPA provides that due consideration and great weight shall be given to interpretations of the Federal Trade Commission and federal courts relating to unfair methods of competition set forth in 15 U.S.C. § 45(a)(1).

### 3. Fraudulent Inducement

Plaintiffs assert a fraudulent inducement claim, but it is not clear whether Florida law or Alabama law applies. In future motions (or if none, in the pretrial statement), the parties must address this choice of law issue. The parties have cited Florida law in the motion and response, so the Court will apply Florida law when ruling on this motion.

"To establish a claim of fraud in the inducement under Florida law, a plaintiff must establish that: (1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that the representation was false; (3) the representor intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the representation and was injured as a result." Global Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1029–30 (11th Cir. 2017)(citations omitted). The Court finds that Plaintiffs have sufficiently alleged these elements.

First, Plaintiffs alleged that Defendants made false statements of material fact, as Plaintiffs alleged that Defendants advertised that C&D could cut Plaintiffs' debt by about half and that there would be no cost to Plaintiffs unless a settlement satisfactory to Plaintiffs was reached. Second, Plaintiffs alleged that Defendants knew these representations were false, and it further appears that there was no basis for Defendants to believe at the outset that they could cut Plaintiffs' debt in half. Third, Plaintiffs allege that Defendants made these statements orally and in the Engagement Letter with the intention of inducing Plaintiffs to rely on these representations and execute the Agreement. Fourth, Plaintiffs relied on these false statements and executed the Agreement, which resulted in Plaintiffs owing C&D a large fee without any reduction to the amount of their debt.

Defendants argue that Kolodner cannot be liable on the fraudulent inducement claim, because he is not a party to the Agreement. However, Plaintiffs allege that Kolodner directed, controlled, and/or approved the advertisement containing the misrepresentations that induced Plaintiffs to execute the Agreement with C&D.

Defendants also appear to argue that the economic loss rule bars this claim given that Plaintiffs are asserting a breach of contract claim. The Court rejects this argument, because Plaintiffs' fraudulent inducement claim is not based on a breach of the obligations contained in the Agreement.[7] See Badger Auctioneers, Inc. v. Ali, 2017 WL 3438224, at *4 (M.D. Fla. Aug. 10, 2017)(stating that "a fraudulent inducement claim must be separate from any breach of contract claim")(citation omitted). Accordingly, the Court denies Defendants' motion to dismiss this claim.

---

[7]Plaintiffs contend that they were induced to enter into the Agreement based on Defendants' representations that: (1) C&D would cut Plaintiffs' debt to about half; and (2) there would be no charge if C&D could not obtain a settlement satisfactory to Plaintiffs. As explained in the next section, the Court finds that there was no obligation in the Agreement that C&D would reduce Plaintiffs' debt to about half. Therefore, the fraudulent inducement claim based on this misrepresentation is not also a breach of the Agreement, so this aspect of the fraudulent inducement claim is not barred by the economic loss rule.

The other basis for Plaintiffs' fraudulent inducement claim is Defendants' misrepresentation orally and in the Engagement Letter that there would be no charge if C&D could not obtain a settlement satisfactory to Plaintiffs. Likewise, Plaintiffs also contend that C&D breached the Agreement by charging Plaintiffs a fee for setting up a payment plan without a reduction in the amount that they owed Wells Fargo. As explained in the next section, it is not clear whether the Agreement imposed an obligation not to charge McNider Marine a fee if C&D did not reduce the amount Plaintiffs owed to Wells Fargo. Therefore, the Court will allow these claims to proceed as alternative claims for relief—either Defendants fraudulently induced Plaintiffs into executing the Agreement due to the misrepresentation stated orally and contained in the Engagement Letter that there would be no charge if C&D could not obtain a settlement satisfactory to Plaintiffs, or C&D breached the Agreement by charging McNider Marine a fee without a reduction in the amount owed to Wells Fargo.

### B. Pleading Count IV

In Count IV, McNider Marine asserts a breach of contract claim against C&D. Like the fraudulent inducement claim, it is not clear whether Florida law or Alabama law applies. In future motions (or if none, in the pretrial statement), the parties must address this choice of law issue. The parties have cited Florida law in the motion and response, so the Court will apply Florida law when ruling on this motion.

McNider Marine claims that C&D breached the Agreement in two ways: (1) by breaching the promise that Plaintiffs' debt would be cut to about half, and (2) by breaching the promise that there would be no charge if C&D could not obtain a settlement satisfactory to Plaintiffs. The Agreement, however, does not contain the promise that Plaintiffs' debt would be cut to about half, and the Court will not re-write the Agreement to find a breach. The Agreement does state that if a settlement is reached, all funds for the settlement (including fees to C&D) will not exceed 60% of the underlying debt unless Plaintiffs agree otherwise. That is not the same as promising to reduce Plaintiffs' debt by half. Accordingly, the Court grants Defendants' motion to dismiss this claim to the extent that it is based on an alleged breach of a contractual obligation that C&D would cut Plaintiffs' debt to about half.

Whether C&D had an obligation not to charge Plaintiffs if C&D could not obtain a settlement satisfactory to Plaintiffs is a closer question. The Agreement clearly states in bold and underlined font: "**There will be no ($0.00) cost to the Debtor if a settlement has not been reached between the parties.**" (Doc. No. 1-2). Furthermore, the Agreement states that if a settlement is reached, all funds for the settlement (including fees to C&D) will not exceed 60% of the underlying debt unless Plaintiffs agree otherwise. C&D did not obtain a debt reduction for

11

Plaintiffs, and Plaintiffs allege that they did not agree to a settlement consisting solely of a payment plan for the original debt amount. Thus, Plaintiffs contend that C&D could not charge a fee for its services and doing so was a breach of the Agreement.

Defendants, on the other hand, argue that Plaintiffs cannot rely on the Engagement Letter to create an obligation in the Agreement. The Court rejects this argument, as the Agreement itself states that there will be no charge if a settlement is not reached. However, the Agreement also states that if a payment plan is arranged, a one-time fee of 8% will apply for claims over $50,001. Thus, the Agreement contains contradictory terms regarding whether, and under what conditions, C&D could charge Plaintiffs. The parties have not done a sufficient job addressing this issue, and the Court declines to address this argument further.

Accordingly, the Court grants Defendants' motion to dismiss to the extent that the breach of contract claim is based on an alleged breach of a contractual obligation that C&D would cut Plaintiffs' debt to about half. The Court denies Defendants' motion to dismiss to the extent that the breach of contract claim is based on an obligation not to charge Plaintiffs if C&D could not obtain a settlement satisfactory to Plaintiffs.

**C. Damages**

Next, Defendants dispute Plaintiffs' damages allegations. Specifically, Defendants argue: (1) Plaintiffs' calculation of their damages is improper and results in a windfall; and (2) Plaintiffs' damages do not exceed the $75,000 jurisdictional threshold for diversity jurisdiction. Accordingly, the Court will address each argument.

First, Defendants dispute Plaintiffs' damages calculation. Plaintiffs contend that the value of the services that Defendants advertised and agreed to provide was a reduction of the

$334,000 debt to about half—or $167,000 and that Plaintiffs would have owed C&D $26,720 had C&D reduced their debt by half. Thus, Plaintiffs contend that their damages are the $140,280 net savings that they expected.

Defendants argue that Plaintiffs' calculation results in a windfall, and the Court agrees. In this situation, it appears that the proper value of Plaintiffs' actual damages is the amount owed and/or paid to C&D, which at most is the $26,720 fee. See Gastaldi v. Sunvest Resort Communities, 709 F. Supp.2d 1299, 1306 (S.D. Fla. 2010)(noting that under FDUTPA, when the good or service is rendered valueless, the purchase price is the proper measure of damages)(citations omitted). To the extent that Plaintiffs wish to pursue consequential damages of lost profits to McNider Marine and destruction of that business as result of the breach of contract claim, Plaintiffs will have to cite to additional authority addressing the issue.

The Court notes that under ADTPA, Plaintiffs could be awarded up to three times actual damages. Ala. Stat. § 8-9-10(a). This means that more than $75,000 in damages is at issue in this case. As such, the Court finds that the $75,000 jurisdictional threshold for diversity jurisdiction has been met.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (Doc. No. 12) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that the breach of contract claim is based on an alleged breach of a contractual obligation that Plaintiffs' debt would be cut to about half. Otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of March, 2018.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

13