UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MCNIDER MARINE, LLC and
JOHN BRUCE MCNIDER,
        Plaintiffs,

v.                                                         Case No. 8:17-cv-2561-T-24 JSS

CAIN & DANIELS, INC., ROBERT
KOLODNER and MAX LORA,
        Defendants.
_____/

## ORDER

This cause comes before the Court on Plaintiffs' Motion for Sanctions, Attorneys' Fees, and Non-Taxable Costs. (Doc. No. 89, 90). Defendants oppose the motion. (Doc. No. 93). Plaintiffs' counsel filed an affidavit in reply. (Doc. No. 94). As explained below, the motion is granted in part.

**I. Background**

Plaintiffs McNider Marine, LLC and John Bruce McNider owed Wells Fargo approximately $334,000. Defendant Cain & Daniels ("C&D") provides debt settlement services, and Defendants Robert Kolodner and Max Lora provide services on behalf of C&D. Defendants sent Plaintiffs documents stating that C&D could cut their debt to about half and that C&D would not charge Plaintiffs anything unless C&D obtained a satisfactory settlement for them. C&D did not reduce Plaintiffs' Wells Fargo debt by about half, yet C&D insisted that Plaintiffs pay C&D for its services.

After the Court ruled on a motion to dismiss and a motion for summary judgment, three of Plaintiffs' claims went to the jury: (1) a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against all three of the defendants; (2) a fraudulent inducement

claim against all three of the defendants; and (3) a breach of contract claim against C&D. The jury heard two days of evidence and then returned a verdict in favor of Plaintiffs on all three claims. (Doc. No. 83).

The jury awarded Plaintiffs $100,000 in compensatory damages on their fraudulent inducement claim (plus $300,000 in punitive damages[1]). The jury awarded McNider Marine $25,000 on its breach of contract claim, and the jury awarded Plaintiffs $6,200 on their FDUTPA claim. After Defendants' Motion for Remittitur, which the Court granted and Plaintiffs accepted, the Court amended the judgment to reflect that the total amount awarded on both the breach of contract and FDUTPA claims was $6,200. (Doc. No. 98).

## II. Motion for Attorneys' Fees

FDUTPA authorizes attorneys' fees for the prevailing party, and Plaintiffs prevailed on their FDUTPA claim. Fla. Stat. § 501.2105(1). Plaintiffs now move the Court for an award of $367,055 in attorneys' fees. While the Court finds that Plaintiffs are entitled to attorneys' fees, the Court finds that the amount sought must be reduced, as explained below.

### A. Standard for Calculating Attorneys' Fees

The Florida Supreme Court has adopted the federal lodestar approach for determining reasonable attorneys' fees. See Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1146 (Fla. 1985). Under the federal lodestar approach, the Court multiplies the number of hours reasonably expended on the litigation times a reasonable hourly rate. Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)(citation omitted). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303 (citation omitted).

---

[1] $100,000 against Kolodner and $200,000 against C&D

2

A reasonable hourly rate is based upon "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299 (citations omitted). An applicant may meet its burden of establishing a reasonably hourly rate by setting forth direct evidence of rates charged under similar circumstances or submitting opinion evidence of reasonable rates. See id. In addition, the Court may use its own expertise and judgment to make an appropriate independent assessment of the reasonable value of an attorney's services. See id. at 1304. In calculating what hours were reasonably expended on litigation, the Court should exclude excessive, unnecessary, and redundant hours, and it should also exclude any time spent litigating discrete and unsuccessful claims. See id. at 1301, 1302 (citation omitted).

Furthermore, in determining a reasonable attorneys' fee award, the Court should consider the following factors:

> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent.

Rowe, 472 So. 2d at 1150.

### B. Reasonable Hourly Rate

First, this Court must determine each attorneys' reasonable hourly rate. Three partner level attorneys worked on this case—Justin Proper, Esq., Shane Heskin, Esq., and Kersteen

3

Martinez, Esq. Plaintiffs contend that the Court should use $575 as their reasonable hourly rate.

Proper graduated from law school in 1999 and has been a partner since 2012. Heskin also graduated from law school in 1999 and has been a partner since 2008. Martinez graduated from law school in 1995 and has been AV-rated by Martindale-Hubbell since 2007. She became a partner at her prior law firm in 2003 and then later started her own law firm. Upon consideration of the information in the record and based on the Court's experience, the Court finds that the requested hourly rate of $575 is not reasonable. Instead, after considering the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation, the Court concludes that their reasonable hourly rate should be reduced to $425.

Four less senior associate attorneys also worked on this case—Avery Dawkins, Esq., Caitlin Danis, Esq., Konrad Krebs, Esq., and Natalie Molz, Esq. Plaintiffs contend that the Court should use $375 as their reasonable hourly rate.

Dawkins graduated from law school in 2013 and has over four years of experience in litigation. Danis graduated from law school in 2014 and has since left her employment with Plaintiffs' counsel to pursue a federal court clerkship. Krebs also graduated from law school in 2014 and then completed a state court clerkship. Molz graduated from law school in 2015 and has extensive litigation experience. Upon consideration of the information in the record and based on the Court's experience, the Court finds that the requested hourly rate of $375 is not reasonable. Instead, after considering the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation, the Court concludes that their reasonable hourly rate should be reduced to $300.

Additionally, Plaintiffs request a few award for three assistants—Arthur Cautilli (paralegal), Christine Dowd (paralegal), and Reth Sorn (electronics litigation support). Cautilli

has been a paralegal since 1990, and Plaintiffs contend that the Court should use $150 as his reasonable hourly rate. Dowd is also a paralegal, but Plaintiffs do not provide any information as to how long she has been a paralegal. Plaintiffs contend that the Court should use $200 as her reasonable hourly rate. Upon consideration and based on the Court's experience, the Court finds that the reasonable hourly rate for both paralegals is $150.

Reth Sorn has an associates degree in Specialized Software and Programing and has been working for Plaintiffs' counsel sine 2016. Plaintiffs contend that the Court should use $125 as his reasonable hourly rate. Upon consideration and based on the Court's experience, the Court finds that the reasonable hourly rate for him is $100.

Based on the above, the Court finds that the following reasonable hourly rates will be used to calculate the attorneys' fee award[2]:

| Name | Hourly Rate |
|---|---|
| Justin Proper, Esq. | $425 |
| Shane Heskin, Esq. | $425 |
| Kersteen Martinez, Esq. | $425 |
| Avery Dawkins, Esq. | $300 |
| Caitlin Danis, Esq. | $300 |
| Konrad Krebs, Esq. | $300 |
| Natalie Molz, Esq. | $300 |
| Arthur Cautilli (paralegal) | $150 |
| Christine Dowd (paralegal) | $150 |
| Reth Sorn (electronics litigation support) | $100 |

---

[2]The Court has considered and rejected Plaintiffs' argument that counsel's hourly rate should be enhanced based on special expertise, the results obtained, and/or other equitable factors.

### C. Number of Hours Reasonably Expended[3]

Next, this Court must determine the number of hours reasonably expended on this case. In doing so, the Court should exclude excessive, unnecessary, and redundant hours, and it should also exclude any time spent litigating discrete and unsuccessful claims. While only the FDUTPA claim entitles Plaintiffs to an award of attorneys' fees, Plaintiffs can also recover their attorneys' fees for time spent on claims based on the same transaction as alternative theories of recovery. See Mandel v. Decorator's Mart, Inc. of Deerfield Beach, 965 So.2d 311, 314 (Fla. 4th DCA 2007).

Plaintiffs contend that 725 hours were reasonably expended in this case. Proper, Heskin, and Martinez billed 551.3 hours; Dawkins, Danis, Krebs, and Molz billed 119.5 hours; and the assistants billed 54.2 hours. The Court has reviewed the billing records (Doc. No. 89-1, 92) and concludes that the following seven reductions must be made.[4]

#### 1. Complaint and Amended Complaint[5]

Proper, Heskin, and Martinez spent 40.3 hours drafting a largely straightforward

---

[3]Rather than identifying and describing each entry that is being discussed and reduced in this order, the Court will attach the billing records with entries highlighted to correlate to the discussion within this order.

[4]In making these reductions, the Court groups the reductions into two categories: (1) reductions to Proper, Heskin, and Martinez's time and (2) reductions to Dawkins, Danis, Krebs, and Molz's time. The individuals in each category were found by the Court to have the same reasonable hourly rate, and categorizing in this way makes it easier to explain and calculate the loadstar amount.
    Also, the Court considered Defendants' objections to Martinez's billing for emails and mediation. However, upon review of Martinez's affidavit in reply, the Court finds that the objections should be overruled.

[5]These entries are highlighted in blue on the billing records.

complaint, reviewing a motion to dismiss it, and then drafting an amended complaint. The complaint contained four claims: (1) FDUTPA, (2) a violation of Alabama's Deceptive Trade Practices Act ("ADTPA"), (3) fraudulent inducement, and (4) false advertising under the Lanham Act. The amended complaint also contained four claims, but Plaintiffs substituted a breach of contract claim in place of the Lanham Act claim.

Upon review, the Court finds that 40.3 hours was excessive for these tasks. Accordingly, the Court concludes that the time for these tasks should be reduced by 10 hours.

### 2. Pro Hac Vice Motions[6]

Martinez and Dawkins spent 4.2 hours preparing and filing two motions to appear *pro hac vice*. That amount of time is excessive for such simple motions. Accordingly, the Court reduces Martinez's time for these tasks by 2 hours, leaving the 2.2 hours spent by Dawkins being reasonably billed.

### 3. Punitive Damages and Other Damages for Fraudulent Inducement[7]

Plaintiffs sought punitive damages on their fraudulent inducement claim. All work related to punitive damages must be excluded, as punitive damages are not available under FDUTPA. See Mandel, 965 So.2d at 314 (stating that time spent on punitive damages, which is beyond the scope of a FDUTPA claim, should be excluded). Furthermore, Plaintiffs billed for time related to expert witnesses; such work related to Plaintiffs seeking additional damages for their fraudulent inducement claim that were not available under FDUTPA. There was no need

---

[6] These entries are highlighted in green on the billing records.

[7] These entries are highlighted in orange on the billing records.

for expert testimony with regard to the $6,200 in damages that was requested at trial and awarded by the jury on the FDUTPA claim.

As such, the Court will exclude the time spent seeking to amend the amended complaint to add punitive damages, the time spent drafting the second amended complaint, the time spent on expert witnesses, and the time spent on income tax discovery; all of this time relates to punitive damages or additional damages not available under FDUTPA. Accordingly, the Court reduces Proper, Heskin, and Martinez's time by 38.8 hours and reduces Dawkins, Danis, Krebs, and Molz's time by 28 hours.

### 4. Travel[8]

Proper, Heskin, and Martinez billed 39.5 hours for time spent on travel related to this case. Defendants argue that their travel time should not be compensated, and they cite to Mandel v. Decorator's Mart, Inc. of Deerfield Beach. In Mandel, the court stated that "without proof that a competent local attorney could not be obtained, an award of attorney's fees from an opponent should not include travel time over and above what a local attorney would charge." Id. at 315. Plaintiffs have not explained why their out-of-town counsel's travel time should be compensated, and therefore, the Court will reduce Proper, Heskin, and Martinez's time by 39.5 hours.

### 5. Time Spent on the ADTPA Claim[9]

Defendants ask this Court to exclude time spent on the unsuccessful ADTPA claim. The Court is mindful that when a FDUTPA claim is based on the same transaction as alternative

---

[8]These entries are highlighted in yellow on the billing records.

[9]These entries are highlighted in pink on the billing records.

8

theories of recovery, all of the attorneys' time can be compensated. See id. at 314. However, Plaintiffs were not successful on their ADTPA claim, and Defendants ask that the time spent on it be excluded.[10] Upon consideration, the Court concludes that approximately 15.4 hours was spent on the ADTPA claim. Accordingly, the Court excludes 6.8 hours billed by Proper and 8.6 hours billed by Krebs.

### 6. Jury Instructions and Verdict Form[11]

Proper, Heskin, and Martinez billed 14.2 hours for drafting the jury instructions and verdict form. Given that the instructions were largely standard and that the instructions and verdict form addressed the unsuccessful ADTPA claim and punitive damages, the Court finds that a 4 hour reduction is warranted.

### 7. Multiple Trial Attorneys[12]

Plaintiffs had three attorneys participate in, and bill for, the trial. The Court finds that having all three attorneys at trial was excessive and unnecessary, and as such, Heskin's hours should be excluded. Proper and Martinez questioned most of the witness, leaving Heskin to question Plaintiffs' expert. The expert's testimony was unnecessary for Plaintiffs to succeed on their FDUTPA claim, and Heskin's presence as a third attorney at trial was redundant. As explained by one court:

> "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." But "[t]he time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted."

---

[10]The Court granted Defendants' motion for a directed verdict on the ADTPA claim, because the Alabama statute did not apply to the transaction at issue. (Doc. No. 77).

[11]These entries are highlighted in purple on the billing records.

[12]These entries are underlined in red on the billing records.

Gowen Oil Co., Inc. v. Abraham, 511 Fed. Appx. 930, 935(11th Cir. 2013)(internal citations omitted). "Thus, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 432 (11th Cir. 1999)(citation omitted).

Plaintiffs have not met their burden of showing that more than two attorneys were necessary for trial and that Heskin's attendance at trial should be compensated. As such, the Court reduces his time by 21.5 hours.

### D. Lodestar Award

The Court has found the reasonable hourly rates that should be used and the reasonable amount of time expended. As explained below, the loadstar method for calculating attorneys' fees results in an attorneys' fee award of $214,847.50.

|  | Hours Billed | Reduction | Compensable Hours | Hourly Rate | Fee Award |
|---|---|---|---|---|---|
| Proper, Heskin, and Martinez | 551.3 | (122.6) | 428.7 | $425 | $182,197.50 |
| Dawkins, Danis, Krebs, and Molz | 119.5 | (36.6) | 82.9 | $300 | $24,870 |
| Arthur Cautilli | 46.9 | 0 | 46.9 | $150 | $7,035 |
| Christine Dowd | .3 | 0 | .3 | $150 | $45 |
| Reth Sorn | 7 | 0 | 7 | $100 | $700 |
| **TOTAL** |  |  |  |  | **$214,847.50** |

### III. Motion for Non-Taxable Costs

Plaintiffs also seek $25,000 in non-taxable costs. "In addition to the award of taxable costs, FDUTPA allows for the award of non-taxable costs, i.e. those costs that are not taxable under federal law at 28 U.S.C. § 1920." Chow v. Chak Yam Chau, 640 Fed. Appx. 834, 836 n.4 (11th Cir. 2015)(citation omitted).

Defendants argue that there is no case law to support an award of non-taxable costs, despite Plaintiffs' citation to Chow in their motion. The Court has reviewed the costs being sought. (Doc. No. 89-1, p. 39–78). Since the Court has already found that the expert witness was unnecessary for Plaintiffs' successful pursuit of their FDUTPA claim, the Court will not award the $22,099.50 cost of their expert witness. Accordingly, the Court awards costs of $2,900.50.

### IV. Motion for Sanctions

Plaintiffs also seek an award of at least $100,000 in sanctions for what they describe as Defendants' litigation misconduct. Specifically, they point out that Defendants did not produce all of the emails between Defendants and Wells Fargo's attorneys; initially, Defendants claimed that such additional email communications did not exist. The email communications that Defendants initially produced were created by cutting and pasting parts of emails to produce a misleading email string.

Plaintiffs learned of the existence of the additional emails on February 14th and 15th of 2019 from Wells Fargo, less than a week prior to trial. Ultimately Plaintiffs were able to obtain the emails and used them at trial. The emails supported Plaintiffs' contention that Defendants

11

were not attempting to reduce Plaintiffs' debt by about half.

Additionally, Plaintiffs contend that Defendants submitted a knowingly false affidavit (Doc. No. 50-1) in opposition to Plaintiffs' motion for summary judgment. The affidavit addressed the factual dispute over the $6,200 that Defendants had retained. Specifically, Defendant Lora stated therein that C&D was holding the $6,200 in escrow for use as directed by Plaintiffs. Plaintiffs contend that such a statement is false, as they requested the return of the money and Defendants refused to return it. The Court denied Plaintiffs' request for summary judgment on their breach of contract claim largely due to the affidavit. (Doc. No. 52).

Plaintiffs contend that they were prejudiced by the above-described misconduct. First, they argue that had the emails been produced when originally requested, Plaintiffs would have had a basis to seek punitive damages against Lora. Second, they contend that had Defendants not filed the false affidavit, they would have obtained summary judgment on their breach of contract claim and would not have had to pursue that claim at trial.

As a result, Plaintiffs ask the Court to impose sanctions in order to protect the integrity of our federal judicial system. Upon consideration, the Court declines Plaintiffs' invitation to award sanctions and denies Plaintiffs' motion on this issue.

## V. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiffs' Motion for Sanctions, Attorneys' Fees, and Non-Taxable Costs (Doc. No. 89) is **GRANTED IN PART as follows:** The Court awards Plaintiffs $214,847.50 in attorneys' fees and $2,900.50 in costs. Otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of April, 2019.

Copies to:

Counsel of Record

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge